UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| SHAWN A. DUFFY, | ) | CIV. 13-4072-KES |
| --- | --- | --- |
| Plaintiff, | ) | |
| vs. | ) | |
| SOUTH DAKOTA DEPARTMENT OF CORRECTIONS MENTAL HEALTH DEPARTMENT; and DR. DAVIDSON, Mental Health Physician, | ) | ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION |
| Defendants. | ) | |

Plaintiff, Shawn A. Duffy, moves for a preliminary injunction. Docket 16. Defendants, South Dakota Department of Corrections Mental Health Department (DOC) and Dr. Christopher M. Davidson, each oppose Duffy's motion for preliminary injunction. Dockets 22, 26. For the reasons set forth herein, the court denies Duffy's motion for preliminary injunction.

"A preliminary injunction is an extraordinary remedy." *Roudachevski v. All-American Care Centers, Inc.*, 648 F.3d 701, 705 (8th Cir. 2011) (citation omitted); *see also Hughbanks v. Dooley*, 788 F. Supp. 2d 988, 992 (D.S.D. 2011) ("[I]n the prison setting, a request for a preliminary injunction 'must always be viewed with great caution because judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration.' ") (quoting *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995)). "The burden of

proving that a preliminary injunction should be issued rests entirely with the movant." *Goff*, 60 F.3d at 520. To determine whether the issuance of a preliminary injunction is appropriate, the court considers the following factors:

(1) the threat of irreparable harm to the movant;
(2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant;
(3) the probability that movant will succeed on the merits; and
(4) the public interest.

*Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981). The court asks "whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Id.* at 113.

Although no single factor is determinative, "[f]ailure to show irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction." *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003); *see also Dataphase*, 640 F.2d at 114 n.9 ("[T]he absence of a finding of irreparable injury is alone sufficient ground for vacating the preliminary injunction."). To demonstrate irreparable harm, plaintiff must show that the harm is "certain, great and of such imminence that there is a clear and present need for equitable relief." *Packard Elevator v. Interstate Commerce Comm'n*, 782 F.2d 112, 115 (8th Cir. 1986). Notably, "plaintiff must make a showing of actual, substantial harm resulting from the alleged infringement." *Travelers Express Co. v. Transaction Tracking Tech., Inc.*, 305 F. Supp. 2d 1090, 1095 (D. Minn. 2003) (citation omitted).

In the instant case, Duffy alleges that defendants have withheld "much needed medication," which he was prescribed for his "serious medical conditions prior to April 2013." Docket 16 at 1. "As a result of the defendants' action and omissions, [Duffy] face[s] continued and further degradation of [his] mental and medical conditions." Duffy further alleges that without a preliminary injunction, he will suffer irreparable damage to his health and "have no plain, adequate or speedy remedy at law." *Id.* at 2–3. The medications that Duffy would like to have reinstated by this court include the following:

(1) methylphenidate for his attention deficit disorder, narcolepsy, and depression, (2) alprazolam for his anxiety, panic attacks, and convulsions, and (3) viibryd for his depression and mood swings. *Id.* at 3.

The court has reviewed the medical records provided by DOC.[1] Based on such evidence, it appears that Duffy has been seen by Dr. Davidson on five separate occasions since his medication was discontinued in April 2013. *See* Dockets 22-2, 22-3, 22-4, 22-5, 22-8. On each occasion, Dr. Davidson discussed with Duffy the importance of undergoing a sleep test for purposes of determining whether Duffy was, in fact, suffering from narcolepsy. Nonetheless, Duffy has repeatedly delayed the taking of an effective sleep study by compromising the results of previous sleep studies (Dockets 22-2, 22-3) and by

---

[1] The DOC provided psychiatric notes from Duffy's doctor visits on May 15, 2013 (Docket 22-2), May 31, 2013 (Docket 22-3), June 28, 2013 (Docket 22-4), July 17, 2013 (Docket 22-5), and August 9, 2013 (Docket 22-8).

3

refusing to participate in subsequent sleep studies (Dockets 22-4, 22-5).[2] In the absence of a sleep study, Dr. Davidson has observed no signs of narcolepsy (Docket 22-5), and Dr. Davidson is unwilling to prescribe methylphenidate for what appears to be self-diagnosed narcolepsy (Docket 22-4 at 2).[3]

When Dr. Davidson refused to prescribe methylphenidate for Duffy's alleged narcolepsy, Duffy began requesting methylphenidate to treat his anxiety and undiagnosed ADHD. Dockets 22-4, 22-5. With regard to Duffy's anxiety, Dr. Davidson suggested Duffy treat such condition with psychotherapy rather than medication. Docket 22-5. Not only had Duffy "been showing a lot of resilience, motivation, and productivity without taking any meds," but Dr. Davidson believed that Duffy demonstrated a history of substance abuse, as evidenced by his request for Xanax during a previous sleep study, and should therefore try alternative, non-medication treatments to address his anxiety.

---

[2] In an e-mail to prison officials, Dr. Davidson suggested that Duffy's sleep study be placed on hold and then described the various ways in which Duffy had complicated the process:
> Mr. Duffy's actions, for example, misleading the pulmonologists before his sleep study to get Xanax which he does not take, sending threatening or accusatory letters to everyone he can think of, and giving us names of many providers/places that he says have knowledge of, or actually performed a sleep study which where [sic] not at all actually involved with a sleep study, have complicated the case and delayed diagnostic and treatment even further.

Docket 22-7 at 1.

[3] Dr. Davidson will not prescribe methylphenidrate to treat Duffy's alleged narcolepsy until there is documentation of such condition. Docket 22-4 at 2. Dr. Davidson has reviewed Duffy's medical records and has been unable to substantiate a previous diagnosis of narcolepsy. *Id.* at 1.

Dockets 22-3, 22-5, 22-6. With regard to treating Duffy's alleged ADHD, Dr. Davidson has not observed evidence that Duffy struggles with such condition. Docket 22-5. To the contrary, Dr. Davidson believes Duffy is "very motivated" and "can focus on certain details very well." Based on his observations and his review of medical reports from other correctional facilities, Dr. Davidson suspects the real issue is that Duffy does not believe he can function without methylphenidate.

Based on this information, it is evident that Duffy is receiving appropriate treatment for the conditions of which he complains. Duffy has not been diagnosed with ADHD or narcolepsy, and thus he is not entitled to a prescription medication to treat either condition. Dr. Davidson did diagnose Duffy with anxiety. Accordingly, Dr. Davidson explored several effective, non-medication alternatives for the treatment of Duffy's anxiety. Finally, Dr. Davidson has suggested alternative anti-depressants to Duffy, but Duffy has not been interested.[4] Therefore, to the extent Duffy "feel[s] that sudden or prolonged discontinuation of prescribed medications can and will have disastrous results [on his] well being," the court finds that such results would be self-inflicted. Docket 16 at 2. Duffy refuses to participate in a sleep study

---

[4] During his initial evaluation, Dr. Davidson suggested Duffy be taken off alprazolam and placed on Xanax. Docket 26 at 1–2. Both are benzodiazepines, but unlike Xanax, alprazolam "has potential for abuse and is often used recreationally." *Id.* at 2. Then, in August 2013, Dr. Davidson suggested Duffy take Prozac to manage his depression, but Duffy refused. Docket 22-8 at 5.

5

that would allow Dr. Davidson to more accurately treat Duffy's alleged conditions, and he discounts alternative treatment plans for the management of his anxiety disorder and depression. Thus, the court finds that Duffy has failed to demonstrate actual, substantial harm resulting from the alleged infringement. Because "[f]ailure to show irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction," *Watkins*, 346 F.3d at 844, the court denies Duffy's motion for preliminary injunction.[5] Therefore, it is

ORDERED that Duffy's motion for preliminary injunction (Docket 16) is denied.

Dated October 4, 2013.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE

---

[5] Even so, Duffy would not likely succeed on the merits of the claim asserted in his motion for preliminary injunction. Based on the psychiatric reports submitted to the court, it appears Duffy is receiving adequate medical care. Dr. Davidson has thoroughly evaluated Duffy at least once a month since April 2013, and he appears observant of and attentive to Duffy's needs. The reports demonstrate that the issue before the court is one involving a disagreement over the appropriate course of treatment, and disagreement with a medical judgment is not sufficient to state a constitutional violation. *Davis v. Hall*, 992 F.2d 151, 153 (8th Cir. 1993); *see also Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997) (noting that "inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment") (citation omitted).